IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VANESSA SCHWENGEL,

                Plaintiff,              OPINION AND ORDER

v.

                                      24-cv-558-wmc

CAVE ENTERPRISES OPERATIONS, LLC,
d/b/a Burger King of Saukville,

                Defendant.

---

While employed at Burger King of Saukville, Wisconsin, owned and operated by Defendant Cave Enterprises Operations, LLC ("Cave"), plaintiff Vanessa Schwengel claims that she endured repeated sexual harassment, resulting in a hostile work environment, discrimination and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. Defendant has since filed a motion for summary judgment on all of these claims. Considering the record in the light most favorable to Schwengel, the court will deny defendant's motion as to plaintiff's hostile work environment claim but grant defendant summary judgment on plaintiff's discrimination and retaliation claims.

UNDISPUTED FACTS[1]

**I.    Cave's Policies for Reporting Harassment and Termination**

Cave's policies encouraged its employees to report workplace problems to their supervisors, higher-level supervisors, or Human Resources:

---

[1] The facts in this section are taken from the summary-judgment record, which the court has viewed "in the light most favorable to the [plaintiff] and constru[ed] all reasonable inferences from the evidence in [her] favor." *Moore v. Western Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023).

1

> Reporting Procedures: . . . If you believe that you are the victim of [sexual harassment], you should immediately bring the matter to the attention of your Department Manager, any officer of the Company, or Human Resources. . . .
>
> Problem Resolution: We hope that in most cases you will be able to resolve problems or concerns about your workplace with your supervisor. If, however, you are uncomfortable reporting your concerns to your supervisor or any higher-level supervisor, you should report your concern immediately to Human Resources.

(Dkt. #21-1, at 7, 15.)

Separately, Cave's policies stated that employees who were repeatedly tardy or absent were subject to discipline and termination. (*Id.*, at 8, 25.) The policies state:

> Basis for Disciplinary action: Repeated unavailability for work. Failing to notify your supervisor of absences or repeated tardiness is grounds for termination. . . .
>
> Tardiness: If you are going to be late for any reason, you must notify management at least three (3) hours prior to the start of your shift. Failure to call-in to report to work without notice on three (3) occasions during any rolling twelve (12) month period is grounds for termination.

(*Id.*, at 8, 25.) Cave's official termination procedure required supervisors to give three recorded warnings to an employee who violated Cave's workplace standards before terminating the employee. (*Id.*, at 16.) Schwengel attests that she was familiar with all of Cave's policies for reporting harassment, disciplining employees, and terminating employees after she completed "onboarding" (i.e., shortly after her employment began). (Schwengel Dep. (dkt #21) 35-38.)

## II. Alleged Harassment

Plaintiff Schwengel worked as a crew member at the Saukville Burger King from mid-April 2022 until March 10, 2023. (Dkt. #18-3, at 1 and Dkt. #21-3, at 1.) John Drescher worked as a crew member at the Saukville Burger King starting May 1, 2022, and continuing until March 13, 2023. (Dkt. #18-1.)

2

According to Schwengel, Drescher repeatedly harassed her between the start of his employment and November 17, 2022. (Schwengel Dep. (dkt. #17-1) 54-67.) Specifically, Schwengel claims that:

- Between May and July 2022, Mr. Drescher made comments, at least three times, to me about the length of his tongue and how he could use it to please me.
- Mr. Drescher made comments about his desire to "eat a banana cream pie off of my ass." These comments occurred at least three times with at least one time occurring in front of the sink in the kitchen area.
- Mr. Drescher told me "let me clear off a place for you to sit" and wiped his hands across his face as if to indicate that I should sit on his face.
- Mr. Drescher repeatedly referred to me as "booty" in the workplace.
- In August 2022, Mr. Drescher approached me by the sink, while I was doing dishes, and made an aggressive gesture towards me meaning "cunt."
- In August 2022, Mr. Drescher approached me, put his hands on me without my consent, and showed me how he could physically "snap my neck."
- During the entire time that Mr. Drescher and I worked together, Mr. Drescher would make kissing noises at me.
- Mr. Drescher made comments about grabbing my ponytail in a sexual manner.
- Mr. Drescher made comments about "cum" and other comments about genitalia.
- In October or November 2022, Mr. Drescher made numerous degrading comments to me such as "are you stupid" and "what's wrong with you." When I asked Mr. Drescher to stop these comments, he responded that "I have to be careful with you" in reference to my recent diagnosis of PTSD.
- On November 17, 2022, I had a gynecologist appointment. After returning to work, Mr. Drescher made numerous comments that I was "getting fisted" and "liked it."

(*Id.*; *see also* Pl.'s Compl. (dkt. #1) ¶ 18-29.)

During Schwengel's shifts, about five total employees were working in the store, and multiple managers were present during each of her shifts. (Schwengel Dep. (dkt. #17-1) 51.) Drescher's conduct occurred in the "small space" in which employees worked together in the restaurant, including in the kitchen area. (*Id.*, at 60, 55.) Schwengel asserts that, as a result, Burger King manager Ricky Augustine witnessed Drescher call Schwengel "booty" while at

3

work.  (*Id.*, at 62.)  In addition, Saukville Burger King General Manager Sean Buchanan and employees Brian Sandona, Christopher Caro and Wade Dehling would "laugh at" and "egg on" Drescher's behavior.  (*Id.*, at 17, 47-48, 72-73.)[2]

On November 17, 2022, Schwengel formally reported Drescher's conduct to General Manager Buchanan, albeit verbally, and she also asked him to talk to District Manager Sara Heinzen-Rosso.[3]  (*Id.*, at 77-78.)  This November 17 report is the only one that Schwengel claims to have formally made to management.  (*Id.*, at 51.)  Shortly after November 17, 2022, Schwengel asserts that Drescher took medical leave and therefore did not work in person at the Saukville Burger King for the remainder of his formal employment with Cave.  (Schwengel Declr. (dkt. #24) ¶ 6).  Schwengel did not experience any further harassment by Drescher while at work after November 17.  (Schwengel Dep. (dkt. #17-1) 83-84.)

### III.    Schwengel's Reduction in Hours and Termination

Following her report of Drescher's sexual harassment on November 17 through her termination on March 10, 2023, Schwengel represents that she had been scheduled for fewer shifts.  (*Id.*, at 84-85.)  However, Schwengel's actual hours remained consistent through mid-January, as she worked between 66-88 hours per pay period, comparable to her pre-reporting

---

[2] Brian Sandona and Christopher Caro were crew members.  (*Id.*, at 54); Blake Decl. (dkt. #18) ¶ 8.)  Schwengel was not sure whether Wade Dehling was a manager or a crew member at Saukville Burger King.  (Schwengel Dep. (dkt. #17-1) 49.)

[3] Defendant argues plaintiff's failure to respond properly to a request for admission that she never made the verbal report to Buchanan amounts to a binding admission of that fact under Federal Rule of Civil Procedure 36(a)(3).  However, there are enough disputes as to the sufficiency of service of the request to admit that the court does not rely on it for purposes of summary judgment. Moreover, defendant's own proposed findings of facts includes a reference to Schwengel's sworn testimony that she "reported Drescher's conduct to General manager Sean Buchanan."  (Dkt. #16, ¶ 26.)  Regardless, since there is no claim of harassment following plaintiff's verbal report to whomever it was made, whether or not made to Buchanan, is not material to the court's ruling.

hours of 53-85 hours per pay period. (Dkt. #18-2, at 2.) Still, between mid-January until her termination, Schwengel worked only 26-43 hours per pay period. (*Id.*) District Manager Sara Heinzen-Rosso stated that all employees at the Saukville Burger King had reduced hours during the winter months due to slower business. (Heinzen-Rosso Decl. (dkt. #19) ¶ 4.)

Following her report of Drescher's sexual harassment, Schwengel also stated that she was scheduled for more night shifts, having normally worked days until that time. (Schwengel Dep. (dkt. #21) 84-85.) Cave's records show that from November 17-March 10, Schwengel worked some night shifts, but she was otherwise primarily scheduled for day shifts, similar to her pre-reporting schedule. (Dkt. #18-3, at 1-5.)[4]

On March 1, 2023, Schwengel showed up for her shift two hours late for which she received a written warning. (Dkt. #21-3, at 2.) That same warning also noted that her managers had given Schwengel multiple, verbal warnings about her tardiness previously. (*Id.*) In contrast, Schwengel testified she could only remember "possibly one" verbal warning before March 1. (Schwengel Dep. (dkt. #17-1) 51). On March 9, Schwengel then missed her shift altogether without notifying managers that she would be absent. (Dkt. #21-3, at 1.) After this missed shift, Assistant Manager Stacie Herbst and District Manager Sara Heinzen-Rosso approved Schwengel's termination. (Heinzen-Rosso Decl. (dkt. #19) ¶ 5.) Schwengel's written notice states that she was fired due to "excessive tardiness" and her "no-call, no-show" day. (Dkt. #21-3, at 1.)

---

[4] Throughout this time, she thought that Saukville managers Ricky Augustine and Sean Buchanan scheduled her shifts, but she was not sure. (Schwengel Dep. (dkt. #21) 85:11-13.)

## IV. Schwengel's Suit

On September 14, 2023, Schwengel filed a Charge of Discrimination with the Equal Employment Opportunity Commission. (Dkt. #17-5.) The EEOC provided her with a Notice of a Right to Sue on May 23, 2024. (Dkt. #17-6.) Schwengel then filed this lawsuit on August 8, 2024, alleging that she suffered a hostile work environment, discrimination, and retaliation based on her gender in violation of Title VII. (Pl.'s Compl. (dkt. #1) 6-8.) Defendant now moves for summary judgment on all three claims. (Def.'s Mtn. (dkt. #14).)

## OPINION

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court examines the record in the light most favorable to the non-moving party and construes all reasonable inferences in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). To preclude summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial," *id*. at 248, and "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [her] favor[.]" *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). The court addresses plaintiff's three, Title VII claims accordingly below.

## I. Hostile Work Environment Claim

A plaintiff claiming unlawful sexual harassment under Title VII must show that: "(1) she endured unwelcome sexual harassment; (2) she was harassed because of her sex; (3) the harassment was so severe or pervasive that it altered the conditions of employment and created

6

a hostile work environment; and (4) there is a basis for employer liability." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017) (quoting *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 (7th Cir. 2010)). Here, the parties do not dispute that Drescher's conduct was unwelcome or based on Schwengel's sex. Plaintiff's claim, therefore, turns on whether Drescher's conduct created a hostile work environment and whether there is a basis for employer liability as a matter of law.

### A. Hostile Work Environment

To determine whether harassing conduct was so severe or pervasive that it altered plaintiff's conditions of employment and created a hostile work environment, the conduct must be both subjectively and objectively offensive. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 880 (7th Cir. 2018). Here, the parties do not dispute that Schwengel was personally offended by the conduct. However, defendant argues that Drescher's conduct was not sufficiently, objectively offensive to create a hostile work environment. To determine whether the conduct was objectively offensive, the court considers the totality of the circumstances. *Equal Emp. Opportunity Comm'n v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387, 401–02 (2024). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Conduct that is "physically threatening" to the plaintiff is more likely to be severe enough to create a hostile work environment if the offending employee "touch[es] her or threaten[s] to touch her." *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 841 (7th Cir. 2009). This

7

is particularly true when physically threatening conduct is combined with "lewd comments or obscene gestures to [the plaintiff's] face." *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 646 (7th Cir. 2005); *see also Dey v. Colt Const. & Dev. Co.,* 28 F.3d 1446, 1456 (7th Cir. 1994) (finding issue of fact as to hostile work environment where harasser's "comments were overtly sexual, and . . . directed specifically at" plaintiff). Further, where the offending employee repeatedly directs his conduct towards the plaintiff over a prolonged period, the pattern of conduct is more likely to be considered pervasive, such that it creates a hostile work environment. *E.g., Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007) (finding sufficient evidence of hostile work environment where at least eighteen sexist or sexual comments were made in less than one year and similar comments were made "very often"); *Jackson v. Cnty. of Racine*, 474 F.3d 493, 500 (7th Cir. 2007) ("Jackson's testimony about [the] offensive actions (simulating masturbation, sticking his finger in her ear, kissing her on the lips), coupled with her testimony about his day-to-day behavior [using sexual language], could, if believed by a trier of fact, show pervasive harassing conduct."). On the other hand, "offhand comments, isolated incidents, and simple teasing do not rise to the level of conduct that alters the terms and conditions of employment." *Passananti v. Cook Cnty.*, 689 F.3d 655, 667 (7th Cir. 2012).

Assessing Drescher's pattern of conduct in the light most favorable to plaintiff, a jury could reasonably infer that his conduct was objectively offensive enough to create a hostile work environment under Title VII. *See Jackson*, 474 F.3d at 500. Specifically, the instance in which Drescher put his hands around Schwengel's neck, showing her how he could "snap her neck" went well "beyond the sort of casual contact which (if it were consensual) might be expected between friendly co-workers, and manifest[ed] in more intimate, intrusive forms of contact." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000). Moreover,

Drescher's comments about grabbing Schwengel's ponytail in a sexual manner could reasonably be viewed as threatened physical contact also contributing to a general hostile work environment. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 977 (7th Cir. 2004).

A reasonable jury could also find that Drescher's specific sexual remarks directed at Schwengel were "more than [] casual obscenit[ies]." *Hostetler*, 218 F.3d at 408. In particular, Drescher allegedly, repeatedly described "hypothetical sexual act[s] between" himself and Schwengel that "could readily be interpreted as [] (uninvited) sexual proposition[s]," including remarks about how "he could use his tongue to please her," "wanted to eat a banana cream pie off her ass," that she should sit on his face, and that she was "fisted" and "liked it" at a gynecology appointment. Taken together, a reasonable jury could find Drescher had engaged in repeated, unwanted sexual propositioning. *Id*. In addition to Drescher's physically threatening behavior and explicit sexual comments directed towards Schwengel, he allegedly, repeatedly referred to her as "booty," made kissing noises at her in the workplace, and used other crude terms referring to "cum" and genitalia. While less explicit, combined with his other conduct, this misconduct also supports a reasonable inference that Drescher directed repeated, unwanted sexual solicitations at Schwengel. *E.g., Jackson*, 474 F.3d at 500 (instances of defendant's most egregious conduct, alongside repeated, lesser misconduct, "could, if believed by a trier of fact, show pervasive harassing conduct" actionable under Title VII).

Under the totality of the circumstances, therefore, a reasonable jury could conclude from the record at summary judgment that Drescher's conduct went well beyond what was merely inappropriate, instead "objectively transform[ing] the workplace to a degree that implicates Title VII." *Hostetler*, 218 F.3d at 808. In particular, a reasonable jury could find that both the severity of Drescher's conduct itself and the "weight of its repetition over time"

9

altered the terms and conditions of Schwengel's employment and created an actionable, hostile work environment under Title VII. *Id.*

### B. Basis for Employer Liability

Even if Drescher's actions could be found to constitute a hostile work environment, defendant argues that plaintiff fails to establish its liability for Drescher's conduct. For an employer to be liable for a co-worker's harassment, the employer must have been "negligent in either discovering or remedying the harassment." *Nischan*, 865 F.3d at 930. An employer is negligent when it knew or should have known of the harassing conduct of a co-worker, yet failed to address it. *Id.* An employee may show that the employer had actual knowledge of the harassment if the employee reported the conduct using an appropriate reporting mechanism, and the employer still failed to remedy the conduct. *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 506 (7th Cir. 2004). Alternatively, an employer is liable for an employee's conduct when the "harassment was sufficiently obvious to put [the employer] on constructive notice." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 391 (7th Cir. 2010); *see also Wilson v. Chrysler Corp.*, 172 F.3d 500, 509–510 (7th Cir. 1999) (employer had constructive notice of harassment when conduct always "public" in the workplace and apparent to management); *cf. Rhodes*, 359 F.3d at 507 (7th Cir. 2004) (employer had no constructive notice when conduct deliberately obscured from supervisors.)

For a hostile work environment claim to be actionable, therefore, plaintiff must *at least* establish that the employer had constructive notice of conduct sufficient to give rise to such a claim. *Vill. at Hamilton Pointe*, 102 F.4th at 404. In particular, the actionable conduct must be obvious to "someone who could reasonably be expected" to report it "up the ladder to the employee authorized to act on it." *Young v. Bayer Corp.*, 123 F.3d 672, 675 (7th Cir. 1997);

10

*see also Nischan*, 865 F.3d at 931 (citing *Young* for constructive notice standard). Plaintiff "need not specifically comply with the [employer's] internal procedure if the employer is adequately put on notice of the prohibited harassment." *Yancick v. Hanna Steel Corp*, 653 F.3d 532, 549 (7th Cir. 2011). However, absent knowledge or at least constructive notice of harassment, employers are not required to do more than promote general anti-harassment policies and provide training to ensure compliance with Title VII. *Rhodes*, 359 F.3d at 507.[5]

Here, plaintiff acknowledges making only a single, formal report on November 17, 2022, and further concedes that after her report, she no longer experienced any harassment by Drescher. Therefore, as defendant notes, no facts in the record would support a finding of its actual knowledge of the behavior or failure to address it after actual notice. Thus, plaintiff's liability claim turns on proof of defendant's constructive notice of Drescher's pattern of conduct. *Nischan*, 865 F.3d at 931. As to notice, Schwengel asserts that defendant's managers were present at each of Schwengel's shifts, and only about five employees were present during any given shift. (Schwengel Dep. (dkt. #17-1) 51). Further, defendant has not rebutted for purposes of summary judgment plaintiff's testimony that the workplace was a "small space" where employees could generally hear one another. (Schwengel Dep. (dkt. #17-1) 60; Dkt. #23, ¶ 23.) Defendant also does not dispute that much of Drescher's conduct occurred

---

[5] Defendant also relies on the *Ellerth-Faragher* affirmative defense to disclaim liability, focusing on the sufficiency of its reporting policies and Schwengel's six-month delay in formally reporting Drescher's conduct. *Burlington Industries Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998). However, the *Ellerth-Faragher* affirmative defense applies when an employer is defending itself from vicarious liability stemming from the conduct of a *supervisor*. *Jackson*, 474 F.3d at 501. Here, the parties do not dispute that the conduct at issue is only that of plaintiff's *co-worker*; thus, the *Ellerth-Faragher* affirmative defense is inapplicable. *Id.* In either case, plaintiff asserts that her harassment claim should survive a summary judgment motion under a theory of direct liability, so that is the only avenue the court considers.

repeatedly in the shared space over the course of six months of employment, including in the kitchen. (Schwengel Dep. (dkt. #17-1) 54-64; Dkt. #23, ¶ 23.) Schwengel even represents that General Manager Sean Buchanan "laughed at" and "egged on" Drescher's conduct. (*Id.*, at 72-73.) Finally, defendant's problem resolution procedures appear to empower both supervisors and higher-level supervisors to "resolve [employees'] problems and concerns" in the workplace. (Dkt. #21-1, at 15.)

Viewing these facts as a whole, a reasonable jury might infer that plaintiff's supervisors and managers would have heard and seen enough of Drescher's misconduct to report the conduct "up the ladder to the employee authorized to act on it," giving rise to a finding of defendant's constructive notice of the hostile work environment she endured. *Young,* 123 F.3d at 675; *Nischan*, 865 F.3d at 931. In the light most favorable to plaintiff, therefore, the facts that Drescher's conduct occurred repeatedly in a workplace of only five people, some of whom were managers on any given day, and that the General Manager of the location even encouraged Drescher's behavior, provide sufficient "evidence that the harassment occurred in front of supervisors" who could have reasonably been expected to either handle or report the conduct that created an actionable hostile work environment. *Bombaci v. J. Cmty. Pub. Grp., Inc.,* 482 F.3d 979, 985 (7th Cir. 2007).[6]

Accordingly, a reasonable jury could find that defendant had constructive notice of Drescher's conduct, and therefore that it was liable for Drescher's conduct by failing to address or correct it, whether or not Schwengel formally reported it. *See Wilson*, 172 F.3d at 509–510;

---

[6] The court reaches this conclusion because it is required to draw all reasonable inferences in plaintiff's favor at summary judgment, including inferring from her general representation that managers were not only aware of Drescher's pattern of sexual harassment, but the general manager egged it on. *See Wilson*, 172 F.3d at 509–510. Whether this inference is reasonable is, however, ultimately up to a lay jury.

*Yancick*, 653 F.3d at 549. Because there are sufficient facts in the records to support a reasonable inference that Drescher's conduct created a hostile work environment under Title VII and that defendant had constructive notice of Drescher's conduct, defendant's motion for summary judgment must be denied as to plaintiff's hostile work environment claim. *Johnson*, 91 F.3d at 931 (7th Cir. 1996).

## II. Discrimination

Schwengel also alleges that she experienced unlawful sex discrimination under Title VII because defendant reduced her hours and eventually terminated her after she reported Drescher's conduct. To sufficiently allege a Title VII discrimination claim, however, the record as a whole must allow a reasonable factfinder to determine that a plaintiff's protected characteristic caused an adverse employment action. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Though no longer favored by the Seventh Circuit, the *McDonell Douglas* burden-shifting framework for evaluating Title VII discrimination claims "remains an efficient way to organize, present, and assess evidence in discrimination cases," particularly when a plaintiff relies on that framework. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) *(citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)). Under that framework, a plaintiff may establish a prima facie discrimination claim by showing: "(1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated male employees." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 647 (7th Cir. 2005). If a plaintiff alleges sufficient facts that raise an inference of unlawful discrimination using the framework, then "the defendant must provide a nondiscriminatory

13

reason for the adverse action," with the burden then shifting "back to the plaintiff to prove that the proffered reasons were mere pretext." *Rongere v. City of Rockford*, 99 F.4th 1095, 1102–03 (7th Cir. 2024).

Here, the parties neither dispute that Schwengel was a member of a protected class, nor that reducing her hours and terminating her were adverse employment actions. Therefore, the court's analysis focuses on whether there is sufficient evidence in the record for a reasonable jury to find each adverse action was taken because of Schwengel's protected characteristic. *See Ortiz v.*, 834 F.3d at 765. To begin, plaintiff relies on the entire evidentiary record, not using the *McDonell-Douglas* framework, to argue that defendant engaged in an adverse employment action based on her sex when it reduced her hours after she reported sexual harassment. In response, defendant points to District Manager Sara Heinzen-Rosso's testimony that *all* employees' hours were reduced in the winter months due to decreased demand from January to March, and therefore, plaintiff cannot show that her sex contributed to Cave's decision to reduce her hours. Plaintiff offers no evidence in the record to rebut this testimony, and more specifically, she offers no evidence that defendant reduced only *her* hours during this period. Even assessing the record in the light most favorable to Schwengel, therefore, no reasonable jury could find that plaintiff's sex contributed to her reduction in hours. *See Rongere*, 99 F.4th at 1103.

Next, plaintiff claims that defendant discriminated against her by terminating her after she reported sexual harassment, apparently relying on *McDonell-Douglas*, because she was meeting defendant's legitimate employment expectations. Specifically, plaintiff notes that she had yet to have three recorded instances of tardiness before defendant terminated her. Plaintiff also argues that she was treated less favorably than other employees because defendant did not

explicitly follow its three-strike procedure before terminating her, thus raising an inference of discrimination. In response, defendant asserts that: (1) Schwengel was not in fact meeting its legitimate expectations that she attend work on time; and (2) plaintiff has failed to offer *any* evidence that she was treated less favorably than any other employee. More importantly, defendant argues that its reason for terminating Schwengel was non-discriminatory, since it was based only on her tardiness and absence from work, pointing out plaintiff's failure to proffer any evidence from which a reasonable jury could find that these reasons for termination were pretextual.

Again, assessing the record in the light most favorable to plaintiff, no reasonable jury could conclude that defendant unlawfully discriminated against her at the time of her termination. First, the record establishes that Schwengel failed to meet defendant's requirement that she notify managers of lateness or absences in at least two, undisputed instances. Even assuming that only two instances of tardiness or absence comported with defendant's legitimate employment expectations, plaintiff also fails to point to any evidence in the record that she *alone* was terminated for tardiness or absences. *Id*. While "an employer's departure from its own policies may be circumstantial evidence of discrimination," plaintiff must also provide "evidence of a specific policy that is regularly enforced and followed in similar situations." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc*., 811 F.3d 866, 882 (7th Cir. 2016). Here, plaintiff offers no evidence that defendant treated her less favorably than any other employee in terminating her for being late and missing work. *Id.*; *Rongere*, 99 F.4th at 1103. Thus, no reasonable jury could infer only from defendant's policies that Cave terminated Schwengel because of her gender, even if in doing so defendant failed to follow its own policies to the letter. *See Rongere*, 99 F.4th at 1103.

Finally, again following the *McDonell-Douglas* framework, defendant argues that it had a non-discriminatory reason to terminate Schwengel. Indeed, Schwengel's written termination notice states that her repeated tardiness and her recent "no-call, no-show" were the reasons for termination. While plaintiff argues that this reason was pretextual, she also fails to "'identify such weaknesses, implausibilities, inconsistencies, or contradictions' in [her employer]'s asserted reason 'that a reasonable person could find [it] unworthy of credence.'" *Coleman v. Donahoe*, 667 F.3d 835, 852–53 (7th Cir. 2012) (quoting *Boumehdi*, 489 F.3d at 792). Without more, defendant's alleged failure to follow its policy exactly is insufficient evidence for a reasonable jury to find the reason for terminating Schwengel was merely pretext for firing her based on gender. *Bagwe*, 811 F.3d at 882. As such, defendant is entitled to summary judgment as a matter of law on plaintiff's discrimination claim. *See id.*

## III. Retaliation

Lastly, plaintiff claims that defendant terminated her in retaliation for reporting Drescher's harassment.[7] To establish that an employer unlawfully retaliated against an employee under Title VII, a plaintiff must show that: "(1) she engaged in activity protected by the statute; (2) she suffered an adverse employment action; and (3) [there is] a causal link between the protected activity and the adverse action." *Vavra v. Honeywell Int'l, Inc.*, 106 F.4th 702, 705 (7th Cir. 2024). To show causation, a plaintiff must offer evidence from which a

---

[7] Though Cave also defends against the claim that it retaliated against Schwengel by reducing her hours, plaintiff only advances at summary judgment the claim that defendant retaliated by terminating her. (Pl.'s Br. (dkt. #22), at 15-16.) By failing to brief the issue, Schwengel waived any argument that Cave retaliated against her by reducing her hours. *Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

reasonable jury could conclude that her employer would not have taken the adverse employment action but for her protected activity. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Importantly in this case, "generally the timing is not suspicious when there is a long gap between the protected activity and the adverse employment action," although auspicious timing alone is insufficient to support causation in any event. *Baines v. Walgreen Co.*, 863 F.3d 656, 665 (7th Cir. 2017). Like a Title VII discrimination claim, if a plaintiff successfully makes a prima facie showing of retaliation, a defendant "must offer a legitimate, nondiscriminatory explanation for the decision to discharge [the employee], with the "burden of production then return[ing] to [the employee] to show that [the employer]'s articulated reason for her discharge is pretextual." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011).

The parties do not dispute that reporting sexual harassment is a protected activity, nor that Schwengel testified that she reported the harassment to her manager Sean Buchanan on November 17, 2022. The parties also do not dispute that defendant terminated Schwengel on March 10, 2023, nor that termination constitutes an adverse employment action. However, defendant argues that the record does *not* support finding a causal link between Schwengel's report and her termination. First, defendant points out the report and termination are too temporally distant to support an inference of causal connection. Second, defendant argues, it had a legitimate, nonretaliatory reason to terminate Schwengel after she was both tardy and absent. In response, plaintiff argues that because the two decisionmakers in her termination, Sara Heinzen-Rosso and Stacie Herbst, knew of her report, that alone is sufficient evidence for a reasonable jury to find the stated reason for her termination was pretextual, especially when her termination did not specifically follow defendant's written criteria and procedures for

17

termination. Herbst and Heinzen-Rosso's knowledge of the report is disputed, and Cave argues that the evidence showing their knowledge is in any case inadmissible.

The court agrees that plaintiff's retaliation claim fails for lack of evidence of causation. Even if Herbst and Heinzen-Rosso knew about the report (and such evidence of their knowledge is admissible), plaintiff offered no theory or evidence from which a reasonable jury could infer that her report of Drescher's harassment factored into defendant's termination decision. Initially, the court agrees with defendant that a delay of six months between Schwengel's report and her termination is unlikely to support a reasonable inference that the report was causal retaliatory termination. *E.g.*, *O'Leary*, 657 F.3d at 635; *Lalvani v. Cook Cnty., Illinois*, 269 F.3d 785, 791 (7th Cir. 2001) ("Other than pure speculation that [the employer] was biding his time, awaiting an opportunity to punish [the employee], [the employee] offers nothing to support a causal connection between the [protected activity] and his ultimate termination.").

Even if it were, however, "any inference of causation supported by temporal proximity may be negated by circumstances providing an alternative explanation for the challenged action." *Jokich v. Rush Univ. Med. Ctr.*, 42 F.4th 626, 634 (7th Cir. 2022). In this case, plaintiff's undisputed tardiness and absence provide both a sufficient alternative explanation *and* a legitimate, non-retaliatory reason for her termination. *Id*. And although "an employer's unusual deviation from standard procedures can serve as circumstantial evidence" of retaliation, *Baines v. Walgreen Co.*, 863 F.3d 656, 664 (7th Cir. 2017), plaintiff also offers no evidence that defendant's relatively minor deviation from its policies and procedures was unusual in her workplace, much less that her tardiness and absence were baseless reasons for termination and therefore pretextual. *Id.*; *Jokich*, 42 F.4th at 634. Even in the light most

favorable to plaintiff, therefore, no reasonable jury could infer from the record at summary judgment that defendant retaliated against her for reporting Drescher's harassment. As a result, defendant is also entitled to summary judgment on plaintiff's unlawful retaliation claim under Title VII. *Anderson*, 477 U.S. at 248.

ORDER

IT IS ORDERED THAT the motion for summary judgment filed by defendant Cave Enterprises Operations, LLC, d/b/a Burger King of Saukville (dkt. #14) is DENIED IN PART as to plaintiff's claim of a hostile work environment in violation of Title VII, and GRANTED IN PART as to plaintiff's claim of discrimination and retaliation in violation of Title VII.

Entered this 10th day of October, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge